### HUNTINGTON *against* HARVEY.

The indorsement in blank of a note not negotiable, implies a warranty that
the sum specified in the note is justly due, that the maker shall be able
to pay it, when it comes to maturity, and that it shall be collectible, by
the use of due diligence on the part of the holder.

The holder of a note not negotiable, indorsed in blank, may not write over
the indorsed name, an absolute promise, or any special contract, repug-
nant to the nature of the undertaking, which the law implies.

The diligence required of the holder of a note not negotiable, in order to
subject the indorser, consists in a demand of payment from the maker,
as soon as the note becomes due, and, in case of non-payment, an imme-
diate suit against him by attachment.

The promise of the indorser of a note, payable to a third person, and by him assigned to the holder, to pay such note, made after the indorser had become discharged from his liability, by the laches of the holder, has no legal efficacy, being without consideration.

In an action by the plaintiff as the payee and holder, against the defendant as the indorser, of a note, given to the plaintiff by *A*., payable on the 1st of *April*, 1819, and indorsed by the defendant, stating, that the plaintiff being about to put such note in suit against the maker, the defendant, on the 1st of *August*, 1819, applied to the plaintiff for forbearance, which the plaintiff agreed to give, and in consideration thereof, the defendant promised to continue the warranty implied by his indorsement; and the evidence was, of an application, by the defendant, to *B*., the assignee of the note from the plaintiff, for forbearance, at the time mentioned in the declaration, when the defendant had become discharged from liability as indorser, by the laches of the holder, and of a parol promise thereupon made, by the defendant, to continue the warranty. Held, that the plaintiff could not recover, 1. because the promise was made to *B*., and not to the plaintiff; 2. because the defendant, after being discharged from his liability, was a stranger to the note, and the promise was, therefore, without consideration; and 3. because the promise being to pay the debt of another person, and not in writing, was within the statute of Frauds and Perjuries.

Admitting that the promise of an indorser of a note not negotiable, to continue his liability as indorser, made in consideration of forbearance, after being discharged from such liability, by the laches of the holder, is a waiver of such laches; yet the effect of the waiver is only to enable the holder to continue the obligation of the indorser resulting from his indorsement, by the use of future diligence.

*Windham*,
July,
1821.

Huntington
*v.*
Harvey.

This was an action of *assumpsit* against the defendant, as indorser of a promissory note, made by *Augustus Bushnell*, for 258 dollars, 21 cents, dated *December* 11th, 1818, payable to the plaintiff, on the 1st day of *April*, 1819. The declaration consisted of four counts.

In the first count, the plaintiff averred, that "the defendant, for a valuable consideration, indorsed said note to the plaintiff, and, by said indorsement, became liable to pay the amount of said note to the plaintiff, according to its tenor and effect; and being so liable, the defendant assumed upon himself, and promised, to pay to the plaintiff the amount of said note, according to its tenor and effect."

In the second count, the plaintiff averred, that "the defendant, in and by a certain writing or note, under his hand, by him well executed, dated, &c. promised the plaintiff, jointly and severally with one *Augustus Bushnell*, to pay him, for value received, the sum of 258 dollars, 21 cents, by the 1st day of April, 1819."

*Windham,*
*July,*
*1821.*

Huntington
*v.*
Harvey.

The third count was as follows : " That on the 1st of *August,* 1819, the plaintiff was the owner and possessor of a certain promissory note, given by *Augustus Bushnell,* and indorsed by the defendant, to the plaintiff; [describing the note in question,] and said *Bushnell* having altogether failed to pay said note according to the tenor thereof, and the defendant having altogether failed to make good his said indorsement and warranty, the plaintiff was about to put said note in suit, and the defendant applied to the plaintiff, and requested him to forbear, and give further day of payment thereon, for a reasonable time, until the 20th day of *September* then next, to which the plaintiff agreed ; and the defendant, in consideration thereof, agreed and promised the plaintiff to continue his said warranty upon said note, and no delay, which had or should take place in the collection of said note until the sitting of the county court for *Windham* county on the second *Tuesday* of *December* then next, should prejudice said warranty, and that said *Bushnell* should be and remain of sufficient ability to pay said note, and that said note should be collectible of him, until the sitting of said county court." The failure of *Bushnell* to pay the note, and his total insolvency, on the 1st of *September,* 1819, were then alleged, with notice to the defendant.

The fourth count, after stating the execution of the note, by *Bushnell,* to the plaintiff, averred, that " the defendant, for a valuable consideration, on the 11th of *December,* 1818, indorsed said contract to the plaintiff, and in and by his the defendant's written indorsement thereon, warranted and promised the plaintiff, that said *Bushnell* should fulfil his said contract with the plaintiff, and pay to him the plaintiff said sum of 258 dollars, 21 cents, by the first day of *April* then next, according to the tenor of said contract."

The cause was tried at *Brooklyn, January* term, 1821, before *Brainard,* J.

The note mentioned in the declaration was given by *Bushnell* to *Huntington,* in payment of produce purchased by the defendant for *Bushnell;* and was afterwards indorsed in blank by the defendant, and assigned by *Huntington,* for a valuable consideration, to *John N. Peabody,* who prosecuted this suit in the name of *Huntington. Peabody* introduced evidence to prove, that after the note became due, *viz.* on the 1st of *August,* 1819, the defendant called upon him, and enquired what amount was due on the note ; and on *Peabody's* informing him of the amount due, and stating to him, that he was going, the

next week, to *Bushnell's* place of residence, to collect the note, and should put it in suit against him immediately, the defendant requested him to forbear putting it in suit, and then said to him, that he was indorser on the note, and that he would stand indorser on it until it should be paid, and would pay it in the course of two or three weeks; and that *Peabody* thereupon agreed to forbear putting the note in suit until after the 20th of *September* then next. It was also proved and admitted, that *Bushnell*, on the 1st of *August*, was able to pay the note, and so continued, until the 1st of *September* following, when he became bankrupt. On these facts *Peabody* claimed, that he was entitled to recover, first, on the second count, considering the defendant as a joint and several obligor with *Bushnell;* secondly, on the third count, upon a contract, in consideration of forbearance, to pay the note as therein stated; thirdly, on the fourth count, on the ground, that the defendant's promise to pay on the 1st of *August*, was a waiver of any want of due diligence, on the part of the holder, previous to that time; and he requested the judge to instruct the jury accordingly. The judge instructed the jury as follows: "It has been decided, and I take it to be settled, that the undertaking of the indorser of such a note as the one in question, is collateral, and not direct: that his warranty is, that the note was given for a good and valuable consideration; that, when due, the promisor will be of ability to pay it; and that the debt, when due, can, by due diligence, be secured; that it is the duty of the holder, immediately on the note's falling due, to secure property, if to be found; and on his failure to do this, the indorser becomes discharged. This view of the law disposes of two of the counts, the second and fourth; for it determines, that the indorser, in this case, is not an original promisor, and that he did not engage, that *Bushnell* should pay the note at all events.

"To entitle the plaintiff to recover, therefore, on the first count, unless *Bushnell* was then a known bankrupt, it was incumbent on the plaintiff, immediately on the note's falling due, to use due diligence, and, by legal process, to secure the debt, if effects could be found.

"But it is claimed, in this case, by the plaintiff, that although this was not done; yet the defendant afterwards waived this omission, and further agreed to stand indorser until the debt should be paid. It is true, that an indorser may, with a knowledge of all the facts, waive all antecedent omis-

*Windham,*
July,
1821.

Huntington
*v.*
Harvey.

*Windham,*
*July,*
*1821.*

*Huntington*
*v.*
*Harvey.*

sions; but he does not thereby make himself liable, as indorser, for an indefinite future period of time. This is inconsistent with the nature of the original indorsement; and cannot be done, without a new engagement in writing.

" It is further claimed, that in consideration of forbearance, the defendant, at the time of the waiver claimed, promised the plaintiff to indemnify him. Forbearance is a good consideration to support a promise, in connexion with interest and duty. But, in this case, if the defendant did make a promise to indemnify, in consideration of forbearance, it is immaterial whether it be within the statute of Frauds and Perjuries, or not; for if made, it was made not to *Huntington*, but to *Peabody*, the holder of the note, and the owner of the debt. A breach of such promise could be no injury to *Huntington*, but to *Peabody* only: of course, no recovery could be had for it, in this action, on the third count.

" If you find, that when the note fell due, *Bushnell* was a known bankrupt, destitute of property; or, that immediately thereafter, and with due diligence, the plaintiff endeavoured, by legal process, to secure the debt, and failed; or although that was not done, still if you find, that the defendant, afterwards, with a knowledge of all the facts, waived this antecedent omission, and the plaintiff, immediately after such waiver, used due diligence, by legal process, to recover the debt, and failed; or that at the time of such waiver, *Bushnell* was a known bankrupt, and the debt could not then, by due diligence, be secured; you will find, that the defendant did assume &c.; otherwise, you will find, that the defendant did not assume," &c.

The jury having returned a verdict for the defendant, on all the counts, the plaintiff moved for a new trial, on the ground of a misdirection.

*Cleaveland,* in support of the motion.

*Goddard* and *C. Perkins,* contra.

Hosmer, Ch. J. *Augustus Bushnell* made his promissory note to the plaintiff, the same not being negotiable; and procured the defendant to indorse it in blank. In this condition it was delivered to the plaintiff, and afterwards assigned by him to *John N. Peabody.*

By uniform and long continued usage, in this state, as well as by repeated determinations, a blank indorsement on a note

not negotiable contains a warranty, that the note is due ; that the maker shall be of ability to pay it, when it reaches maturity ; and that it shall be collectible, by the use of due diligence. *Bradley & al.* v. *Phelps,* 2 *Root* 325. *Swift's Ev.* 342. *Williams* v. *Granger,* 4 *Day* 444. The holder may not write over the indorser's name a direct and absolute promise, nor insert any special contract, repugnant to the nature of a blank indorsement, as it has always been understood ; for it is not to be presumed, that the assignor, by an indorsement in blank, intended any thing more than a power of attorney with warranty, accompanied by a transfer of the money, when collected. See *Bradley & al.* v. *Phelps,* 2 *Root* 325. *Swift's Ev.* 342. before cited. The diligence before mentioned requires, that the contents of the note shall be demanded of the maker so soon as it falls due, and if it be not paid, that it shall immediately be put in suit against him, by attachment. On failure of this, the indorser is released from his responsibility. *Swift's Ev.* 347.

The first, second and fourth counts in the plaintiff's declaration have not declared on the defendant's indorsement, according to its legal effect. The indorser did not contract to pay the note in question *according to its tenor and effect ;* nor to pay it *jointly and severally with Bushnell ;* nor that *Bushnell* should fulfil his engagement *according to the tenor of the note.* The promise averred in the first count to have been made, *after* the defendant was released from his indorsement, by the plaintiff's laches, was without consideration, and of no legal efficacy ; the defendant having become virtually a stranger to the note, and divested of all obligation antecedently contracted. *Hummers* v. *Hunton,* cited *Hardr.* 73. *Loyd* v. *Lee.* 1 *Stra.* 94. *Tooley* v. *Windham, Cro. Eliz.* 206. *Forth & al.* v. *Stanton,* 1 *Saund.* 210. 1 *Roll. Abr.* 26. *pl.* 10.

In the third count, the plaintiff founds himself on a promise, in relation to the same note, made by the defendant, to *John N. Peabody,* in consideration of his forbearance to sue *Bushnell,* and *after* the defendant was discharged from his indorsement. To the claim on this count the objections are numerous and conclusive.

In the first place, the promise was made to *Peabody,* not to the plaintiff, *Huntington ;* and the plaintiff can have no ground of pretence to sue upon a contract made to another person. Secondly, the defendant was, in effect, a stranger to *Bushnell's* note ; and his promise was entirely without considera-

*Windham,*
*July,*
*1821.*

Huntington
*v.*
Harvey.

tion. Thirdly, the promise to pay the debt of another person, not being in writing, was void by the statute of Frauds and Perjuries. *King* v. *Wilson*, 2 *Stra.* 873. *Rothery* v. *Curry*, *Bul. N. P.* 281. *Fish* v. *Hutchinson*, 2 *Wils.* 94. 1 *Saund.* 211. *a.* *Sears* v. *Brink*, 3 *Johns. Rep.* 210. *Peabody* v. *Harvey*, ante. 119

It has been contended, that the promise to *Peabody* was, at least, a waiver of his antecedent omission to bring a suit by attachment against *Bushnell.* Admitting this proposition, which it is unnecessary to controvert, yet it is clearly indisputable, that a waiver is merely a relinquishment of right, but has not, in its nature, any thing prospective. By the alleged relinquishment, the plaintiff was only placed in a condition to continue the obligation of the defendant, resulting from his indorsement, by a prompt and vigorous recurrence to his legal remedy against *Bushnell.* Any other construction would give an interminable effect to the waiver, and render the defendant a perpetual guarantor of *Bushnell's* debt. At the time of the supposed waiver, *Bushnell* was of ability to pay the plaintiff's demand, and so continued for about a month, when he became bankrupt. If the obligation, on the defendant's indorsement, was revived, by his promise, considered as a renunciation of his right, by reason of the plaintiff's former omission, the defendant was again released from his obligation, by the plaintiff's subsequent neglect.

The other Judges were of the same opinion.

New trial not to be granted.