Downer *v.* Baxter.

---

SOLOMON DOWNER *v.* CHESTER BAXTER.

*Principal and surety. Right of surety to be reimbursed by his principal for costs paid by him. New trial. Separation of jury during their deliberations. Competency of jurors' affidavits in regard to their conduct during trial.*

It is well settled in this state, that a surety may recover of his principal costs which he has incurred and paid in litigating in good faith the claim upon which he is surety.

The plaintiff and the defendant being jointly liable to a third person, the defendant furnished the plaintiff with money to pay half the debt, and the latter promised to pay the whole claim, which, however, he did not do, and they were sued upon it, and the plaintiff employed an attorney to defend the suit. This attorney afterwards sued them both for his fees, and, while the plaintiff was willing to pay his half thereof, and suffered a default in

the suit, the defendant resisted it upon the ground that it was the plaintiff's duty to have paid the original debt, and that the plaintiff alone employed the attorney; the defendant appealed the suit to the county court, and litigated it there until it finally resulted in a judgment for the attorney, for the amount of his claim, with costs. This judgment was paid by the plaintiff, who thereupon brought assumpsit for money paid, against the defendant. *Held,* that after the plaintiff had received from the defendant the latter's share of the original debt, and had agreed to pay it himself, the defendant became merely the surety of the plaintiff; that the plaintiff defended the original suit at his peril, and therefore had no claim upon the defendant for payment of or contribution to either the attorney's claim or even the costs which were incurred by the defendant's litigation thereof, such litigation appearing to have been carried on in good faith.

The statute (Com. Stat. p. 222 sec. 23), providing that a jury, after a case is committed to them, shall be confined under the care of an officer until they have agreed on a verdict or are discharged by the court, is merely directory.

The fact that a jury separate, without leave of the court, after a case has been committed to them, and before they have agreed upon their verdict, and afterwards come together and agree, affords no reason *per se,* and as *mere matter of law,* for a new trial.

When a jury have so separated, and a motion is made for a new trial on that ground, the application is addressed to the discretion of the court upon the question whether the jury were tampered with during the separation, and their verdict affected thereby, and when the county court have passed upon this question, their decision can not be revised by the supreme court upon exceptions, unless an error of law has been committed below, in the admission or rejection of testimony.

Affidavits of jurors may be read, upon a motion for a new trial, to exculpate themselves and to sustain their verdict, but not to impeach it.

INDEBITATUS ASSUMPSIT for money paid. Plea, the general issue, and trial by jury, at the December Term, 1856,—UNDERWOOD, J., presiding.

On trial, the plaintiff gave evidence tending to prove that the plaintiff and the defendant were formerly joint owners of a farm, which was occupied by one Thomas Sargeant, upon a contract of tenancy upon shares ; that during said tenancy, an account accrued in favor of Sargeant against the plaintiff and the defendant, for which he commenced an action at law against them ; that one Cobb was employed by the plaintiff and the defendant, as an attorney, to defend this suit; that subsequently Cobb commenced an action upon book account against the plaintiff and the defendant, before a

Downer *v.* Baxter.

justice of the peace, to recover for his services; that the plaintiff did not appear to defend this last named suit, but suffered judgment to pass against him before the justice, by default, and was willing to pay his half of Cobb's account; that the defendant, Baxter, appeared before the justice and resisted the suit upon the ground that he had paid to Downer the amount of Sargeant's account previous to the commencement of any suit by Sargeant, and that Sargeant's suit was defended, and Cobb was employed by Downer alone; that Cobb recovered a judgment before the justice for twenty-seven dollars damages and one dollar and fifty cents costs; that Baxter thereupon took an appeal to the Orange county court, and defended the suit from term to term, upon the same grounds upon which he insisted before the justice, but that Cobb finally recovered judgment against both Downer and Baxter, for thirty-five dollars and nineteen cents damages, and forty-six dollars and fifty cents costs; that Cobb afterwards commenced an action of debt upon this judgment, before a justice of the peace, and recovered judgment, September 3, 1855, for ninety-nine dollars and seventy-two cents damages, and two dollars and twenty-six cents costs, and execution was issued; that Baxter afterwards procured a third person to purchase said execution and cause the whole amount to be collected from Downer, (and this was conceded), and that Downer did pay thereon, December 24, 1855, one hundred and six dollars and ninety-five cents.

The defendant insisted, and gave evidence tending to prove, that Downer brought Sargeant's account to him and that he paid to Downer one-half of the full amount of Sargeant's account previous to the commencement of any suit by Sargeant, and that Downer agreed to see Sargeant soon after and settle the account with him; that that suit was defended, and Cobb was employed solely by Downer, and that he, Baxter, attended only as a witness on the part of Downer, and at his request.

The plaintiff insisted, and requested the court to charge the jury, that even though the jury should find the fact to be as the defendant insisted, yet that the plaintiff, having suffered default before the justice, in the suit brought by Cobb against the plaintiff and the defendant, and the defendant having appeared and defended the same solely upon the ground above stated, and having appealed

the same for the sole purpose of litigating that question with Cobb, the defendant could not thus enhance the costs at the expense of Downer, and that the latter was entitled, in any event, to recover of the defendant in this suit, the difference between the amount of costs before the justice, in Cobb's suit, and the amount of costs ultimately recovered by Cobb in the county court.

The court refused to charge as requested, but charged the jury that the plaintiff was not entitled to recover, excepting for one-half of the whole sum paid by him, and that his right thus to recover was dependent upon the truth of the facts now claimed by the defendant, giving instructions to the jury in this respect, to which there were no exceptions. To the refusal to charge as requested, the plaintiff excepted.

The jury returned a verdict for the defendant. After the rendition of the verdict, the plaintiff moved for a new trial upon the ground that after the case had been committed to the jury, and they had retired for consultation, but before they had agreed upon their verdict, they were allowed to separate and go to their respective boarding houses, and remain separated for an hour, after which they returned and resumed their deliberations upon the case and agreed upon and delivered their verdict.

The facts in regard to this matter appeared as follows:

The case was given to the jury in the forenoon; and they came in "not agreed" once before noon, and were sent back by the court to their room for further deliberation. The officer having them in charge erroneously supposed that the court had given them leave to separate for dinner, and accordingly allowed them to separate, and they went to their respective boarding houses to dinner, and returned after the lapse of about an hour, and resumed their deliberations upon the case. They came in once after the opening of the court after dinner, "not agreed," but they were again sent out by the court, and remained out until three o'clock in the same afternoon, when they returned a verdict for the defendant.

The affidavits of all the jurors was read stating that after they were empanelled to try the cause, they had no conversation with any one touching it, except among themselves, and that they heard no remarks in regard to it until after the verdict was rendered, except the conversation of their fellow jurymen among themselves,

and what was said in open court upon the trial of the case. The county court overruled the motion for a new trial, and rendered judgment for the defendant, to which the plaintiff excepted.

*Washburn & Marsh*, and *W. C. French*, for the plaintiff.

*A. Tracy*, for the defendant, cited, upon the question of the defendant's liability, *Fletcher* v. *Jackson*, 23 Vt. 581; *Hulett* v. *Soullard*, 26 Vt. 295; *Hayden* v. *Cabot*, 17 Mass. 169; *Beckley* v. *Munson*, 22 Conn. 300; and upon the question of granting a new trial, 1 Graham & Wat. on New Trials 85; *Smith* v. *Thompson*, 1 Cowen 221; *Horton* v. *Horton*, 2 Cowen 589; *Ex parte Hill*, 3 Cowen 355; *The People* v. *Douglass*, 4 Cowen 26; *Burritt* v. *Phillips*, 1 Gallison 360; *Newell* v. *Ayer*, 32 Maine 334; and upon the admissibility of the juror's affidavits, *Dana* v. *Tucker*, 4 Johns; *Sargeant* v. *Deniston*, 5 Cowen 106; *Ex parte Kendall*, 6 Cowen 53; *Jackson* v. *Dickinson*, 15 Johns. 309; *Haskell* v. *Beckett*, 3 Greenleaf 93; *Taylor* v. *Greeley*, *id.* 204; *State* v. *Hascall*, 6 N. H. 352; *Tenny* v. *Evans*, 13 N. H. 462; *State* v. *Ayer*, 3 Foster 301; *Ramadge* v. *Ryan*, 9 Bingham 333; *Newell* v. *Ayer*, 32 Maine 334.

The opinion of the court was delivered by

BENNETT, J. This is an action of general assumpsit for moneys paid to the use of the defendant.

It appears that one Cobb was employed, as an attorney, to defend a suit which had been brought against the parties to this action by their tenant, in which there was a joint liability, and originally a joint interest. In process of time, Mr. Cobb commenced his action against these parties to collect his fees in that suit, and Cobb's suit was continued in a course of litigation until his debt and cost exceeded one hundred dollars, and the whole judgment was paid by Downer. *Prima facie*, the plaintiff should recover a moiety of the sum paid, of this defendant.

But the defendant gave evidence tending to prove that he paid to Downer one-half of the tenant's claim against them both, before the tenant had commenced any suit against them, and Downer thereupon agreed with the defendant to see the tenant soon, and settle his account, and that after the tenant commenced his suit,

Downer alone employed Cobb to defend the suit, and that the defendant only attended the trial as a witness for, and at the request of Downer.  Under the charge of the court, it is to be taken by the verdict of the jury, that they have found these facts, and if so, what must be their effect?  Can Downer, after this, claim contribution?  After Baxter had paid into the hands of Downer a moiety of the tenant's claim, under an agreement that he would see it settled, Baxter, in effect, stood simply as surety for Downer, as between themselves, and in violation of his agreement, Downer neglected to pay the tenant, suffered a suit to be commenced, and employed counsel to defend it.  It is difficult to see how Downer can have a claim for contribution out of such a state of facts, for any part of the moneys paid by him.  But it is said that Downer ought, at least, to recover of Baxter the costs that accrued in the suit, which Cobb commenced against them subsequent to the appeal. This claim is grounded upon the fact that, at the justice trial, Downer was willing to pay a moiety of Cobb's claim, and suffered a default; and that Baxter appeared and defended the suit before the justice on the aforesaid facts, took an appeal and defended the suit on the same ground in the subsequent stages of its progress. We think he was fully justified in defending the suit, and upon the facts found by the jury, it would seem that if they had been made known to Cobb at the time he was employed by Downer to defend the tenant's suit, they would have constituted an ample defence. It can hardly be conceived that if Downer had told Cobb that Baxter had no interest in the suit, and that he was bound to see the claim settled, there could have been any recovery against Baxter, upon the ground that Downer and Baxter were. co-defendants in the suit which Downer employed Cobb to defend.  Downer was the man in the wrong, and if he took it upon himself to defend the suit of the tenant, he did it at his own peril, and was bound to indemnify Baxter from all damage and costs, and it was his duty when he employed Cobb, to have informed him as to the relation in which he and Baxter stood in the matter, and Baxter had a right to suppose he had done it.

In *Fletcher* v. *Jackson*, 23 Vt. 593, the right of a co-surety to recover costs and expenses, is made to de pendaltogether on the question, whether the defence was made under such circumstances

Downer *v*. Baxter.

as to render it hopeful. If so, contribution may be had even between co-sureties, and the case is stronger between principal and surety.

In *Hulett* v. *Soullard*, 26 Vt. 293, the rule was recognized that a surety may recover costs which have been incurred in good faith. See 5 Rawle 106; 17 Mass. 169.

In *Beckley* v. *Munson*, 22 Conn. 300, the surety was indemnified, and defended the suit against the will of the principal, and after he was informed by the principal that there was no defence. He could not, after this, have claimed very well that the defence was made in good faith.

There is some conflict in the cases, but we must consider the rule settled in our own courts.

We think then, there was no error in the direction given by the county court to the jury.

The next point we are to consider, is the decision of the county court overruling the motion for a new trial.

The ground of the motion is that the jurors, after they had received the charge of the court, and had retired for consultation, and before they had agreed upon their verdict, separated some little time to go to their dinners, without an order of the court, and without being under the charge of an officer, and the question now before us is, does this constitute such an irregularity in the proceedings as will *per se* and *as matter of law*, render the verdict of the jury a nullity, so that no valid judgment can be rendered thereon?

It is true the statute declares, that when the court have committed a cause to the consideration of a jury, "such jury shall be confined under the care of an officer appointed by the court, and sworn for that purpose, until they are agreed upon a verdict or are discharged from giving a verdict by order of the court;" Comp. Stat. 222 § 23.

But suppose the officer does not do his duty in this respect, and suffers the jury, or some one of them, to separate before they are agreed. The statute does not declare what the effect of such an irregularity shall be on the verdict.

The statute requires, that to the *presentments* made by a town grand juror, there shall be *subjoined* a memorandum of the names of the witnesses in support of the prosecution, yet it does not declare what the effect of an *omission* shall be.

This statute has always been held to be *directory*, and that an omission to annex the names of the witnesses to the complaint, was no cause for quashing the proceedings. So the statute in relation to keeping together a petit jury is purely *directory*; and though it may be, and is, a misbehavior in a jury *towards the court*, for them to separate before they are agreed, unless from necessity, and they ordinarily ought to be punished therefor as for a contempt, yet to set aside a verdict for such a cause, as matter of law, and in a case where the separation was not prejudicial to the ends of justice, would be to punish the parties, and not the jury. An application of this kind is addressed to the discretion of the court who tried the cause, and if the conduct of the jurors is such as to furnish a fair ground to presume that they may have been tampered with, and to impugn their motives, the court would, no doubt, set the verdict aside. But if the case was one in which the court could see that the verdict was clearly right from the testimony, they would, no doubt, be less liable to listen to an application to set the verdict aside for the misbehavior of the jurors, and while we fully admit that a separation of the jury, if attended with reasonable suspicions of abuse, will be a ground for a new trial, yet this inquiry necessarily involves matters of fact, and the question whether the ends of justice and the purity of jury trials require a new trial to be granted in a particular case, must rest in the sound discretion of the court which tried the cause. This court does not revise the decisions of the county court resting in discretion, but, upon exceptions, sits as a court of error.

In the case of the *State* v. *Babcock*, 1 Conn. 401, the trial was a capital one, and a new trial was granted because one of the jurors was not a *freeholder*; but in the same case, the court refused to grant a new trial on the ground that the jury separated before they had agreed upon a verdict. There is one instance in this state, *Briggs* v. *Georgia*, 15 Vt. 61, where the supreme court, upon exceptions, granted a new trial, for the reason that one of the jurors was not a freeholder, but, if I understand that case, it goes upon the ground that it was a mis-trial, as much so as if but eleven jurors had been called. But that case is quite distinguishable from the present.

There is no ground in the case before us, to impute to the jury

Downer *v.* Baxter.

any intentional wrong. The officer who had the charge of them had got the impression that the court had permitted them to separate to go to dinner, and so informed the jury, and the affidavit of the twelve jurors precludes all suspicion of their being tampered with during their separation. They state that no one spoke to them about the cause, neither did they hear any conversation between other persons in relation to it. As matter of discretion, we think, if we could revise it, it was properly exercised by the county court.

An objection was taken to the competency of the affidavits of the jurors, and their admissibility raises a legal question, which we are called upon to decide. We think the true rule is, that the affidavits of jurors may be read to exculpate themselves and sustain their verdict, but not to impeach it. In this case they were offered to show that the jurors had no conversation with others, nor heard any in relation to the cause.

To this extent they were clearly admissible, we think ; *State* v. *Hascall*, 6 N. H. 361. If, upon the hearing of a motion of this kind, the county court admit illegal, or reject legal evidence, and exceptions are taken, the error should be corrected, and the case sent back to the county court to be proceeded with and disposed of as to the merits of the motion, in their sound discretion.

The judgment of the county court is affirmed.